UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HOMER T. RICHARDS,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN,<br><br>    Respondent. | CAUSE NO. 3:23-CV-1070-TLS-APR |

OPINION AND ORDER

Homer T. Richards, a prisoner without a lawyer, filed a habeas corpus petition under 28 U.S.C. § 2254 to challenge his conviction for attempted murder under Case No. 02D06-1509-F1-11. Following a jury trial, on March 15, 2016, the Allen Superior Court sentenced him to thirty years of incarceration.

In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On August 18, 2015, Richards and his girlfriend of several years, April Miller (Miller), ended their relationship. At the time, Miller worked as a manager at Cap n' Cork, a liquor store, located on Lewis Street in Fort Wayne, Allen County, Indiana. Approximately one week after her break-up with Richards, Miller began dating a long-time customer from Cap n' Cork—Peter Major (Major). Richards, however, continued to contact Miller on a regular basis, even showing up at her house at night uninvited. After obtaining permission from her district manager, Miller informed Richards that he was no longer permitted inside Cap n' Cork.
>
> For several weeks, Richards adhered to this ban, although he regularly waited outside the store in an attempt to talk to Miller on her way to and from work. On September 21, 2015, Miller arrived at Cap n' Cork between 8:30 and 8:45 a.m. in order to open the store at 9:00 a.m. Once again, Richards was waiting for her outside the store, but Miller proceeded directly inside. Later that morning, Miller left the store to empty the garbage. Richards approached her and attempted to discuss a reconciliation. Miller explained that she had no interest in resuming their

relationship, but Richards argued with her. Eventually, Miller "didn't want to listen to it anymore so [she] shut the door and went inside." Thereafter, Richards repeatedly attempted to call Miller on her cellphone, but Miller refused to answer. Despite his ban from the liquor store, Richards went inside and began yelling at Miller for not answering her phone. As Miller tried to carry on with her tasks, the two argued about Miller's refusal to reconcile and Richards' insistence that she quit her job because "he has been around there longer."

At approximately 12:30 p.m., Richards was still at Cap n' Cork, arguing with Miller. At this time, Miller's new boyfriend, Major, arrived at Cap n' Cork, along with his brother, John Tinker (Tinker). Major asked Richards, "[W]hy do you keep fucking with her, why don't you just leave her the fuck alone[?]" This inevitably led to an argument between Richards and Major, and upon realizing that Major was dating Miller, Richards invited Major to "go outside." Instead of exiting the store, Major punched Richards multiple times, knocking Richards to the ground. Tinker intervened and pulled Major away from Richards. Major ordered Richards to leave the store, and despite the fact that Tinker was holding onto him, Major managed to knock Richards to the ground once more. As Richards stood, he stated that he would leave and walked out the door. However, a few minutes later, Major saw through the window that Richards was walking back toward Cap n' Cork—this time with a firearm in his hand. Before Major could lock the door, Richards pulled it open and was "[w]aving the gun around." He then aimed the gun at Major and fired twice; Major dropped to the ground.

Miller rushed to Major's side while calling 911, as Tinker tackled Richards and snatched the gun away from him. Outside the liquor store, a customer, Domonic Holliday (Holliday), heard the gunfire and immediately ran inside. Unaware of who fired the shots, Holliday jumped on Tinker's back as Tinker wrestled with Richards. Assuming that Holliday was Richards' cohort, Tinker turned and hit Holliday in the head with the gun. Tinker chased Holliday out of the store and even pulled the trigger to shoot at him as he fled, but there was no ammunition left in the gun. As Tinker turned back toward the liquor store, Richards was running away. Tinker dropped the gun on the floor and checked on Major, who was struggling to breathe. Tinker then ran to his vehicle and drove off in an attempt to locate Richards, but the police apprehended Tinker and took him into custody for questioning.

Major was transported by ambulance to Lutheran Hospital. He survived the shooting and was hospitalized for nearly two months. Major sustained a collapsed lung, and one of the bullets "traversed and injured his spinal . . . column as well as his spinal cord." As a result, Major is now paralyzed from the chest down and requires ongoing therapy.

During the investigation at Cap n' Cork, police officers retrieved the handgun—a 9mm Luger, as well as two shell casings and a tactical stainless steel knife. In addition, Miller informed the officers that Cap n' Cork was equipped with

surveillance cameras and that a copy of the footage could be obtained from the main Cap n' Cork branch located on Coldwater Road in Fort Wayne.

On September 25, 2015, the State filed an Information, charging Richards with Count I, attempted murder, and Count II, aggravated battery, a Level 3 felony. The State also filed an Information for Application for Additional Fixed Term of Imprisonment based on Richards' use of a firearm in the commission of his aggravated battery offense.

\* \* \*

On February 16–17, 2016, the trial court conducted a bifurcated jury trial.

\* \* \*

At the close of the evidence, the jury returned a guilty verdict on both Counts. Thereafter, the jury made a separate determination that Richards used a firearm in the commission of the aggravated battery offense, thus warranting an additional fixed penalty.

On March 15, 2016, the trial court held a sentencing hearing. The trial court merged the aggravated battery charge into the attempted murder charge and entered a judgment of conviction for attempted murder, a Level 1 felony. The trial court imposed the advisory sentence of thirty years, fully executed in the Indiana Department of Correction.

*Richards v. State*, 65 N.E.3d 647 (Ind. Ct. App. 2016); ECF 12-7 at 2–8.

In the petition, Richards asserts that trial counsel rendered ineffective assistance by failing to object to the video recording evidence due to tampering; by failing to object to the presentation of a knife' references to a premises ban, domestic dispute, and false claims from the prosecution; by failing to call witnesses; and by failing to object based on double jeopardy. He asserts that appellate counsel rendered ineffective assistance by failing to argue that the presentation of the knife was improper. He also asserts prosecutorial misconduct with respect to the tampered video recording evidence, the presentation of a knife, and references to a premises ban, domestic dispute, and false claims from the prosecution.[1]

---

[1] It is unclear from the habeas petition as to whether Richards asserts prosecutorial misconduct as a freestanding claim or merely as a component of his ineffective assistance of counsel claims as he did

3

Richards further asserts that he is entitled to habeas relief due to errors during State post-conviction proceedings. Because there is no constitutional right to post-conviction proceedings, this claim does not present valid grounds for habeas relief. *See Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016) ("It is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing.").

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the Court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

On direct appeal, Richards did not present any of his habeas claims to the Indiana appellate courts. ECF Nos. 12-5, 12-8. On post-conviction review, Richards presented his

---

during post-conviction review. For purposes of this opinion, the Court assumes that he presented them as freestanding claims in the habeas petition.

4

ineffective assistance of counsel claims to the Allen Superior Court, who denied the petition based on the merits of claims. ECF Nos. 12-10, 12-11. On post-conviction appeal, Richards presented his claims to the Indiana Court of Appeals, but this appellate court found that "[the] arguments in his appellate brief [were] disjointed, rife with incomplete sentences, and overall lacking in cogency." ECF No. 12-15 at 17. The appellate court concluded that Richards had waived his arguments pursuant to Indiana Rule of Appellate Procedure 46(A)(8)(a). *Id.*[2] The appellate court further found that, notwithstanding the waiver, Richards did not demonstrate deficient performance or prejudice. *Id.*

"[A] procedural default [bars] consideration of a federal claim on either direct or habeas review [when] the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Here, the Indiana Court of Appeals expressly found that Richards had waived his arguments, and its consideration of the merits of the claims does not undermine this finding of waiver as a basis for procedural default. *See id.* at 264 n.10 ("Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). Richards does not argue that the appellate court erred by finding waiver, but, even if he had, "a federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules, even if they are the basis for a procedural default." *Johnson*

---

[2] Indiana Rule of Appellate Procedure 46(A)(8)(a) requires that "[t]he argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning." Ind. R. App. 46(A)(8)(a).

*v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015).[3] Therefore, Richards' claims are procedurally defaulted.

Richards primarily asserts that the Court should excuse the procedurally defaulted nature of his claims because he did not have counsel on post-conviction appeal. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Maples v. Thomas,* 565 U.S. 266, 280 (2012); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). The exception is that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *see also Brown v. Brown*, 847 F.3d 502, 508 (7th Cir. 2017). According to *Martinez*, "inadequate assistance of counsel" includes both when post-conviction counsel renders ineffective assistance as defined by *Strickland v. Washington*, 466 U.S. 668 (1984), and when a post-conviction petitioner proceeds without counsel. *Martinez*, 566 U.S. at 9, 11–14. However, the *Martinez*

---

[3] *Johnson* further noted exceptions to this rule in instances of "obvious subterfuge to evade consideration of a federal issue" or a record where it was "clear that the claim had been properly raised." *Id.* at 508 n.7. But, here, only a cursory review of the argument portion of Richards' appellate brief (ECF 12-12 at 11–39) is necessary to confirm that the State court's cogency-related concerns were not unfounded.

6

exception "does not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16 (emphasis added). As detailed above, Richards defaulted his claims on post-conviction appeal rather than during "initial-review collateral proceedings." As a result, he cannot assert lack of counsel to excuse procedural default.

Richards may also be asserting that the Allen Superior Court's denial of an evidentiary hearing and the inability to obtain discovery on post-conviction review as an excuse to procedural default. While these issues could have plausibly prevented Richards from supporting his post-conviction claims with evidence, it is unclear why it would have prevented him from presenting cogent arguments in his appellate brief. Notably, Richards' traverse is significantly more cogent than his appellate brief even in the absence of discovery or an evidentiary hearing. ECF No. 23-1. So, too, is his petition to transfer to the Indiana Supreme Court. ECF No. 12-16.

Richards also briefly asserts insufficient access to the prison law library as an excuse, but the appellate brief spans forty typed pages, outlining forty-one issues, with numerous citations to legal authorities and to the record, a table of authorities, and word count certification, and appears to comply with the procedural requirements in every other respect. ECF No. 12-12. The lengthy and nearly compliant state of the appellate brief strongly suggests that Richards had adequate library time to prepare his appellate brief. *See* Ind. R. App. 46(A) (explaining arrangement and contents of appellant's brief). Further, the same "disjointed" presentation of arguments also appears in his amended petition for post-conviction relief, which he amended after nearly three years of post-conviction litigation and thus suggests that the lack of cogency in his appellate brief was not attributable to appellate deadlines or insufficient access to the law

library. *See, e.g.*, ECF No. 12-10 at 13, 22, 25–26. The post-conviction appellate reply brief, which was filed even before the fifteen days allotted by Indiana Rule of Appellate Procedure 45(B)(3) had expired, is also written in a similar "disjointed" style. ECF Nos. 12-4, 12-14. On this basis, the Court cannot find that the "disjointed" presentation of arguments is attributable to limited access to the law library. Consequently, Richards has not demonstrated a valid excuse to procedural default. Because the claims are procedurally default, the Court cannot grant Richards habeas relief.

## PENDING MOTIONS

Richards filed a Motion to Appoint Counsel [ECF No. 24]. The Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), permits the appointment of counsel in a habeas corpus case, if "given the difficulty of the case and the litigant's ability, [he] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have . . . a reasonable chance of winning with a lawyer at his side." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997).

He also filed a Motion to Compel the Production of His Client File Maintained by Trial Counsel [ECF No. 25]. A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6 of the Rules Governing Section 2254 Cases provides that "a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

Here, the record is unambiguous as to the procedurally defaulted nature of the habeas claims and further contains no suggestion that Richards could assert a valid excuse to procedural default. Consequently, it does not appear that either appointed counsel or access to his client file

from trial counsel would meaningfully assist Richards in litigating this habeas case. Therefore, the Court denies these motions.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the Court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this Order, there is no basis for encouraging Richards to proceed further.

## CONCLUSION

For these reasons, the Court hereby DENIES the motion for counsel [ECF No, 24]; DENIES the motion for discovery [ECF No. 25]; DENIES the habeas corpus petition [ECF No. 2]; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the Clerk of Court to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on November 29, 2024.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT